# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

SHAWKAT ABBAS AND WEEAM )
AHMAD, )
       )
     **Plaintiffs,** )
       ) **Case No. 3:24-cv-01283**
**v.** ) **Judge Aleta A. Trauger**
       )
**TRUIST BANK,** )
       )
     **Defendant.** )

## <u>MEMORANDUM</u>

Defendant Truist Bank ("Truist") has filed a Rule 59(e) Motion to Alter or Amend Judgment (Doc. No. 21). For the reasons set forth herein, the motion will be denied.

## I.     FACTS AND PROCEDURAL HISTORY

The court will only briefly recount the facts and procedural history, which are more fully set forth in this court's earlier memorandum ("Memorandum") (Doc. No. 18), in which the court explained why it denied Truist's Motion to Compel Arbitration and Stay Case (Doc. No. 10). Plaintiffs Shawkat Abbas and Weeam Ahman leased from Truist a safe deposit box, which disappeared. (Memorandum at 2.) They sued for damages in state court, and Truist removed and then moved to compel arbitration and stay under the Federal Arbitration Act ("FAA"). (*See id.* at 3.) The plaintiffs argued that, because neither of the two documents governing their box ("Box Lease" and "Box Rules")[1] contains an arbitration agreement or incorporates one by reference, they

---

[1] The Safe Deposit Box Lease ("Box Lease") is in the record at Doc. No. 15-1 at 1–2. The Safe Deposit Box Rules & Regulations Terms and Conditions ("Box Rules") is in the record at Doc. No. 15-1 at 5–6.

need not arbitrate. (*See id.* at 11–12.) The defendant argued that, because the terms governing the plaintiffs' Truist deposit account ("2024 Rules & Regulations")[2]—which they opened years before they leased the box—contain an arbitration agreement according to which the parties must arbitrate any claim that "arises out of or relates to . . . any aspect of [their] relationship," (Doc. No. 11-2 at 54, 2024 Rules & Regulations at 2), they must. (*See* Memorandum at 11.)

The court denied Truist's Motion to Compel Arbitration and Stay Case (Doc. No. 10). (Doc. No. 19.) In brief, the court found that the FAA did not apply to this case and therefore declined to employ the Sixth Circuit's test to determine, when the FAA does apply, whether the dispute falls within the arbitration clause's scope. (*See* Memorandum at 14–22.) Truist timely filed a Rule 59(e) Motion to Alter or Amend Judgment (Doc. No. 21) and an accompanying exhibit (Doc. No. 21-1) and Memorandum (Doc. No. 22), to which the plaintiffs have filed a Response (Doc. No. 26), as ordered. (Doc. No. 23.) Trust has also filed a Notice of Appeal. (Doc. No. 24.) The appeal has been held in abeyance pending this court's ruling on the defendant's motion. (Doc. No. 25.)

## II.     LEGAL STANDARD – RULE 59(e)

Parties may move "to alter or amend a judgment [within] 28 days after the entry of judgment." Fed. R. Civ. P. 59(e). "Rule 59(e) motions are aimed at reconsideration, not initial consideration. Thus, parties should not use them to raise arguments which could, and should, have been made before judgment issued." *Jones v. Select Portfolio Servicing, Inc.*, 672 F. App'x 526, 530 (6th Cir. 2016) (quoting *Wardle v. Lexington–Fayette Urb. Cnty. Gov't*, 45 F. App'x. 505, 511 (6th Cir. 2002) (per curiam)). "Under Rule 59, a court may alter the judgment based on: (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or

---

[2] The 2024 Rules & Regulations are in the record at Doc. No. 11-2 at 50–94.

2

(4) a need to prevent manifest injustice." *Gen. Motors, LLC v. FCA US, LLC*, 44 F.4th 548, 563 (6th Cir. 2022) (quoting *Clark v. United States*, 764 F.3d 653, 661 (6th Cir. 2014)).

District courts have "considerable discretion" over Rule 59 motions. *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010). "Relief under Rule 59(e) is an extraordinary remedy reserved for exceptional cases." *Adams v. Diamond*, No. 3:18-CV-00976, 2022 WL 982365, at *1 (M.D. Tenn. Mar. 30, 2022) (quoting *Hines v. Comm'r of Soc. Sec.*, 414 F. Supp. 3d 1080, 1081 (S.D. Ohio 2019), *aff'd*, No. 22-5224, 2023 WL 5596858 (6th Cir. June 1, 2023). And such extraordinary relief is "seldom granted." *Mitchell v. Citizens Bank*, No. 3:10-00569, 2011 WL 247421, at *1 (M.D. Tenn. Jan. 26, 2011) (Haynes, J.) (citation omitted).

## III.   DISCUSSION

### A.    Truist's newly filed declaration

The court will first discuss the declaration Truist has submitted along with its Motion to Alter or Amend. (*See* Doc. No. 21-1, McCown Decl.). The declaration contains two substantive statements: first, when the plaintiffs leased their safe deposit box, Truist had a policy that required all lessees to have a deposit account; and second, the plaintiffs paid some of their box fees through automatic withdrawal from their Truist deposit account. (*Id.* at 2, McCown Decl. ¶¶ 5–6.) This is important for two reasons, the defendant argues. First, it shows that Truist could, and did, draft box fees from its customers' deposit accounts. (Doc. No. 22 at 2–3.) Second, it demonstrates that any box lessee would have agreed to the deposit account's rules, which contains the at-issue arbitration agreement. (*Id.*) Truist does not discuss the relevance of the automatic withdrawals. As for the requirement to have a deposit account to lease a safe deposit box, Truist argues that this "reinforce[s] that Plaintiffs' safe deposit box lease was part and parcel of their broader relationship with Truist governed by the deposit account agreement." (*Id.* at 7.)

3

The plaintiffs argue that the court cannot consider the declaration. (Doc. No. 26 at 4–5.) First, as the plaintiffs point out, Truist bases its motion on clear error, not new evidence. (*Id.* at 5.) And in any event, the declaration does not put forth any newly discovered evidence. (*Id.*) Instead, the plaintiffs argue, the defendant is improperly using the declaration to make new arguments, which is not permitted under Rule 59(e). (*Id.* (citing *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998)).)

Truist argues that the court "*sua sponte* placed at issue whether the parties' dispute arose specifically out of Plaintiffs' deposit account agreements and whether Plaintiffs had to have a Truist deposit account to lease a safe deposit box." (Doc. No. 22 at 2 (citing Memorandum at 22).) "Further," Truist argues, "the Order discusses facts not put at issue" by the briefs. (*Id.*) And, Truist states, it is clear error for the court to "ma[k]e a decision outside the adversarial issues presented to the Court by the parties." (*Id.* at 3–4 (quoting *Braxton v. Scott*, 905 F. Supp. 455, 457 (N.D. Ohio 1995).) To correct this supposed error, Truist submitted the declaration. (*Id.* at 2.)

As a general matter, Truist is right about the law: judges should "render a judgment based only on the factual record and legal arguments the parties at hand have chosen to develop." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 426 (2024) (Kavanaugh, J., concurring in part). But Truist is wrong on the facts.

First, Truist discussed in its briefs the issues it now says the court *sua sponte* placed at issue. In its opening brief, for example, Truist argues that, "[g]iven the Arbitration Provision's broad language of arising out of 'any aspect of [Truist and Plaintiffs'] relationship,' it is immaterial that claims relate to a separate account or are not based explicitly on the account agreement containing the Arbitration Agreement." (Doc. No. 11 at 13–14 (citation omitted) (alteration in original).) In its Reply, Truist refers to caselaw it discussed in its opening brief "demonstrating

4

that arbitration provisions parties entered into with respect to one account or aspect of their relationship may, if broadly worded, govern claims arising from a separate account or separate aspect of their relationship." (Doc. No. 17 at 1–2.) Truist now implausibly argues both (1) that this court clearly erred by *sua sponte* discussing whether the arbitration provision in one agreement governs disputes arising from another agreement (Doc. No. 22 at 2–3) *and* (2) that this court clearly erred by failing to apply Sixth Circuit caselaw to determine whether the claim is "within the scope of an arbitration provision in a different agreement," "[e]ven if [the] claim arises from one of the agreements that does not contain an arbitration provision," which, Truist argues, is the case here. (*Id.* at 8–9.)

Second, Truist ignores the plaintiffs' Response brief. The plaintiffs argued that the deposit account's arbitration agreement does not govern the box, which is governed by its own rules and a lease. (*See generally* Doc. No. 15.) Moreover, it is hard to imagine how this court could have competently decided the case without considering which agreement the dispute arises out of and the relationship between the relevant agreements. Because movants should not use a Rule 59(e) motion to make arguments they could have made earlier, and for the foregoing reasons, the court will not consider the belated declaration or any arguments that rely on it.[3]

---

[3] The court will make one final note on this point. Without the belated declaration, the court already knew that the plaintiffs were bound by the 2024 Rules & Regulations. Moreover, the court finds it telling that Truist refers to its requirement that box lessees also maintain a deposit account as an "internal policy." (Doc. No. 22 at 14.) Neither the new declaration nor any brief even implies that the plaintiffs knew about this policy. And Truist has filed no consumer-facing document that attests to this policy, even now.

5

## B. The FAA

### 1. Section 2's "arising out of" provision

As the court explained in the Memorandum, "[t]he FAA applies to '[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract.'" *Stutler v. T.K. Constructors Inc.*, 448 F.3d 343, 345 (6th Cir. 2006) (quoting 9 U.S.C. § 2). Thus, to the extent an arbitration agreement requires arbitration of disputes that do not arise out of the contract that contains the arbitration agreement, it exceeds the FAA's scope—even if the dispute at issue theoretically falls within the arbitration agreement's scope. *Accord Revitch v. DIRECTV, LLC*, 977 F.3d 713, 721 (9th Cir. 2020) (O'Scannlain, J., concurring) ("By negative implication, the FAA does not require the enforcement of an arbitration clause to settle a controversy that does *not* arise out of the contract or transaction." (emphasis in original)); *Calderon v. Sixt Rent a Car, LLC*, 5 F.4th 1204, 1212 (11th Cir. 2021) ("The Act governs an arbitration agreement only to the extent that it compels arbitration of 'controvers[ies]' that 'aris[e] out of' the 'contract' containing the arbitration agreement or the 'transaction' evidenced thereby." (quoting 9 U.S.C. § 2) (alterations in original)).

Neither the Sixth Circuit nor the Supreme Court has addressed the scope of the FAA's "arising out of" language. Few courts have. *Accord Christian v. Uber Techs., Inc.*, No. CV 24-00304 (EGS), 2025 WL 833130, at *5 (D.D.C. Mar. 17, 2025) ("There is very little case law[.]"); *Revitch*, 977 F.3d at 721 (O'Scannlain, J., concurring) ("I have been unable to find any case that explains it."). Nor have many courts addressed arbitration provisions as broad as the one at issue. (*See* Memorandum at 16 & n.15 (citations omitted).) Because neither the Supreme Court nor the Sixth Circuit has weighed in, this court "may be able to look to other circuits for persuasive authority." *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 824 (2024). That is what this court did. (*See* Memorandum at 20–22.) The court also examined the statute's

6

plain language. (*See* Memorandum at 20.) *Accord Apogee Coal Co. v. Dir., Off. of Workers' Comp. Programs*, 112 F.4th 343, 354 (6th Cir. 2024) ("If clear, the plain meaning of the statutory language controls."); *cf. Alexander v. Univ. of Ky.*, No. 5:24-CV-107-KKC, 2025 WL 540441, at *6 (E.D. Ky. Feb. 18, 2025) (turning, in the absence of relevant caselaw, to a statute's language).

The court found that this dispute does not "'arise[] out of' a contract containing a 'written provision . . . to settle by arbitration a controversy.'" (Memorandum at 22 (quoting 9 U.S.C. § 2).) And on that basis, it found that it could not compel arbitration under the FAA. (*See Id.*)

Truist disagrees with this court's analysis of the FAA. (*See* Doc. No. 22 at 10–12.) First, Truist argues that the court should not have considered whether the arbitration agreement exceeds the FAA's scope and, instead, should have evaluated only whether, under Sixth Circuit caselaw, the dispute falls within the arbitration agreement. (*Id.* at 10–12.) For the reasons discussed below and in this court's Memorandum, and in the absence of controlling law to the contrary cited by the defendant, the court is not persuaded by this argument. Second, Truist relies on its recently-submitted declaration—which this court has declined to consider—to argue that the "contractual relationship between Truist and Plaintiffs under the deposit account agreement is a but-for cause of their claims in relation to the safe deposit box because Truist required them to have a deposit account to lease the safe deposit box." (*Id.* at 13.) Because the court will not consider the declaration on which this argument relies, it will not address this argument's merits. The Motion to Alter or Amend does not "clearly establish a manifest error of law" as to this court's analysis of the FAA, and the court will therefore not amend its judgment on this basis. *See D.E. v. John Doe*, 834 F.3d 723, 728 (6th Cir. 2016) (quoting *Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 395 (6th Cir. 2007)).

7

### 2. *Presumption of arbitrability*

Truist argues that the court clearly erred by "failing to give effect to the strong presumption of arbitration." (Doc. No. 22 at 1.) Indeed, the FAA "establishes 'a liberal federal policy favoring arbitration agreements.'" *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 505–06 (2018) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24 (1983)). But the FAA's presumption of arbitrability depends on the FAA's applicability. *See Tallakoy LP v. Black Fire Energy, Inc.*, No. CV 13-57-ART, 2013 WL 12177344, at *2 (E.D. Ky. Oct. 29, 2013) (Thapar, J.) ("The presumption in favor of arbitrability . . . applies to every arbitration clause within the scope of the Act[.]" (citing *NCR Corp. v. Korala Assocs., Ltd.*, 512 F.3d 807, 813 (6th Cir. 2008))). The court found that the FAA does not apply to this dispute (Memorandum at 22), so neither does its presumption of arbitrability. *See Davitashvili v. Grubhub Inc.*, 131 F.4th 109, 124 (2d Cir. 2025) (Pérez, J., concurring) ("Where claims do not 'arise out of' the contract at issue, that means no federal presumption of arbitrability." (citing *Calderon*, 5 F.4th at 1213–14)). It was not clear error to fail to give effect to a nonexistent presumption.

### C. The Sixth Circuit's tests to determine whether a dispute falls within an arbitration agreement's scope

As the court wrote in the Memorandum, the Sixth Circuit has set out two tests to determine whether a dispute falls within an arbitration agreement's scope, depending on the circumstances, as stated in *Fazio v. Lehman Brothers, Inc.*, 340 F.3d 386 (6th Cir. 2003), and *Nestle Waters North America, Inc. v. Bollman*, 505 F.3d 498 (6th Cir. 2007). (*See* Memorandum at 14–16.) Truist argues that it was clear error for the court not to apply the Sixth Circuit's scope-of-arbitration tests, both of which, Truist argues, would find that this dispute falls within the arbitration clause's scope. (*See* Doc. No. 22 at 6.) The court considered but did not apply these tests because it found that they were not constructed to handle cases like this one and are therefore inapplicable. (*See*

8

Memorandum at 15–19.) And, in any case, the court held that the FAA does not apply to this case and therefore it could not compel arbitration, no matter the tests' outcomes. Nevertheless, the court explained why, were it to apply the tests, the "plaintiffs would likely prevail." (*Id.* at 15.) The court will explain its reasoning more fully.

Such an application would have been futile because, given the arbitration clause at issue, the extant tests' purpose is at odds with their parameters. The tests' purpose is to determine "whether a specific dispute falls within the scope of a valid arbitration provision." *Matalka v. Home Point Fin. Corp.*, 753 F. App'x 372, 375 (6th Cir. 2018). As the court explained in its Memorandum, the arbitration provision at issue here is so broad that it requires arbitration of nearly any dispute between the parties, and even involving some non-parties. (*See* Memorandum at 16.) This accords with Truist's understanding as well: it quoted a case for the proposition that an "arbitration provision . . . [that] covered claims relating to 'any aspects of the relationship,' . . . 'clearly establishe[d] that the arbitration clause was intended to apply to *all conflicts between the parties*.'" (Doc. No. 17 at 4–5 (quoting *Cara's Notions, Inc. v. Hallmark Cards, Inc.*, 140 F.3d 566, 571 (4th Cir. 1998) (first alteration in defendant's brief) (emphasis added)).) "Thus," Truist concluded, "Plaintiffs' claims are clearly covered by the Arbitration Provision." (Doc. No. 17 at 4; *see also id.* at 2 ("the Arbitration Provision clearly applies because it covers claims arising from 'any aspect' of Plaintiffs' relationship with Truist.").) So, the tests *should* find that a dispute between the parties falls within the arbitration provision. But, as the court found, neither test would yield this predicted result. (*See* Memorandum at 15–16.)

### 1. *Fazio v. Lehman Brothers, Inc.*

Truist points to language in *Fazio* stating that "[a] proper method of analysis here is to ask if an action could be maintained without reference to the contract or relationship at issue." *Fazio*, 340 F.3d at 395. (*See* Doc. No. 22 at 6.) Truist argues that, even if the plaintiffs need not reference

9

the contract that contains the arbitration provision to bring this action, the action cannot "be maintained without reference to their relationship with Truist." (*Id.* at 7.) And, Truist argues, "relationship" means the plaintiffs' "overall contractual and banking relationship with Truist resulting from its deposit account agreement." (*Id.* at 14.)

Putting aside the fact that Truist raises arguments that could and should have been raised in support of its Motion to Compel Arbitration, the court finds that the language of the contracts themselves does not support the suggestion that the box lease was part of an "overall contractual and banking relationship," to which the plaintiffs must refer to maintain their action. First, the two agreements explicitly establish distinct relationships. The deposit account agreement states, "You acknowledge and agree that the relationship between you and the bank created by the opening of an account is of debtor and creditor." (Doc. No. 11-2 at 53, 2024 Rules & Regulations at 1.) By comparison, the safe deposit box terms state that "[t]he relationship between Bank and Lessee(s) is strictly that of landlord and tenant." (Doc. No. 15-1 at 5, Box Rules ¶ 3.) Second, the Box Lease states that the "undersigned Lessees hereby lease[] the above referenced Safe Deposit box in accordance with the terms and conditions set forth in Bank's Safe Deposit Box Rules and Regulations." (Doc. No. 15-1 at 1.) The Box Rules, in turn, do not mention the 2024 Rules & Regulations or any other applicable agreements. Nor do the 2024 Rules & Regulations mention boxes.[4]

---

[4] Truist also argues that support for its view lies in its internal policy requiring box lessees to be deposit account holders. (Doc. No. 22 at 7.) As the court has discussed, it will not consider arguments that rely on the previously undiscussed internal policy. Moreover, even if Truist "regarded customers' use of its deposit accounts and safe deposit boxes as aspects of a single banking relationship," as "reflected in . . . Truist's policy ensuring that no customer could open a safe deposit box without being subject to its deposit account agreement" (*id.* at 8), there is no indication that the plaintiffs knew or should have known about this policy.

This court previously described the Sixth Circuit's discussion of "relationship at issue" in *Matalka*. (*See* Memorandum at 15.) In that case, the plaintiff, Matalka, was hired as the defendant's "Branch Manager," pursuant to a written contract that contained an arbitration agreement that required arbitration of "[a]ll disputes . . . between [the parties] arising out of or relating directly or indirectly to this Agreement." *Matalka*, 753 F. App'x at 373–74 & n.3. Then, pursuant to an oral contract, without an arbitration agreement, the defendant also hired Matalka to be its "Regional Manager." *Id.* at 373. When Matalka sued under the Regional Manager contract, the defendant moved to compel arbitration under the Branch Manager contract's arbitration provision. *Id.* at 374. The court applied *Fazio* and declined to compel arbitration because the plaintiff could maintain his action "without reference to the Branch Manager contract or Plaintiff's employment relationship with Defendant *in that capacity*." *Id.* at 375 (emphasis added). That is, while Matalka had to reference his employment relationship with the defendant to sue under his Regional Manager contract, the "relationship at issue," under *Fazio*, was his Regional Manager employment relationship. The same reasoning applies here: the relationship at issue is the landlord/tenant relationship that arose from the Box Lease.

In any event, as the Sixth Circuit has clarified, the "critical inquiry in determining whether a dispute falls under an arbitration clause is whether the action can be maintained without reference to the agreement containing the arbitration clause." *Dental Assocs., P.C. v. Am. Dental Partners of Mich., LLC*, 520 F. App'x 349, 352 (6th Cir. 2013) (citing *Fazio*, 340 F.3d at 395). As this court already noted, all of the plaintiffs' claims could be maintained without reference to the 2024 Rules & Regulations—the agreement containing the arbitration clause. (*See* Memorandum at 16.) The plaintiffs bring breach of contract and negligence claims against Truist for allegedly losing their box and violating the terms of their Box Lease. (*See id.* at 15–16.) The 2024 Rules & Regulations,

which govern deposit accounts, do not mention safe deposit boxes. Truist points to no provision of the 2024 Rules & Regulations the plaintiffs must consult to maintain this action. And in fact, the plaintiffs do not mention the 2024 Rules & Regulations, or their deposit account, in their Complaint. (*See generally* Doc. No. 1-1 at 5–16.) They do mention, however, the Box Lease and Box Rules. (*See id.* ¶¶ 43–45.)

Clearly, the plaintiffs must refer to their relationship with Truist to sue it for mishandling their safe deposit box. This would be the case for most, if not all, disputes between the parties. But the plaintiffs need not—and did not—refer to their deposit account or contract that contains the arbitration agreement. Truist attempts to distinguish *Matalka* by arguing that "the instant Arbitration provision is much broader than the one at issue in *Matalka*." (Doc. No. 22 at 8.) This bootstrapping argument is unconvincing and shows why this court found the Sixth Circuit tests inapplicable to this case in the first place. To determine whether a dispute fits within an arbitration provision's scope, the court looks to what, by necessity, the complainant must refer—even if, as here, the arbitration clause would seem to include all—or nearly all—disputes.

### 2. *Nestle Waters North America, Inc. v. Bollman*

A narrower test applies when "the parties have entered into multiple contracts as part of one overall transaction or ongoing relationship." *Matalka*, 753 F. App'x at 375 (quoting *Nestle Waters*, 505 F.3d at 503–04). Under *Nestle Waters*, courts "examin[e] which agreement determines the scope of the contested obligations." *Nestle Waters*, 505 F.3d at 504 (quotation marks omitted). For the reasons stated above, the Box Lease and the Box Rules determine the scope of the contested obligations. (*See also* Memorandum at 15–16.) The defendant's obligations to the plaintiffs, with respect to their leased box, are "commonsensically" set forth in the Box Lease and Box Rules. *See Matalka*, 753 F. App'x at 375. (*See also* Memorandum at 15–16.)

The defendant now argues that, especially in light of its new declaration, because the deposit account agreement is the "umbrella" agreement for the "overall relationship" between the parties, it, and its arbitration agreement, govern this dispute. (Doc. No. 22 at 8–9.) As Truist notes, the Sixth Circuit has addressed this situation: "[e]ven if a claim arises from one of the agreements that does not contain an arbitration provision, it may still be within the scope of an arbitration provision in a different agreement if the court finds that agreement to be a 'master' or 'umbrella' agreement 'governing the parties' overall relationship.'" (*Id.* at 9 (quoting *Dental Assocs.*, 520 F. App'x at 352).) But Truist omits *Dental Associates*' next sentence: "However, even in cases involving umbrella agreements, the key question is still whether the action can be maintained without reference to the agreement containing the arbitration clause." *Dental Assocs.*, 520 F. App'x at 352 (citing *Nestle Waters*, 505 F.3d at 505). Here, it can.

### 3. Intent of the parties

Truist argues, in the alternative, that, even if the plaintiffs' claims could be resolved without reference to the 2024 Rules & Regulations, "arbitration may still be compelled 'if the intent of the parties indicates otherwise.'" (Doc. No. 22 at 8 (quoting *NCR Corp. v. Korala Assocs.*, 512 F.3d 807, 814 (6th Cir. 2008)).) If the parties had intended to arbitrate disputes arising out of the Box Lease and Box rules, "they could have easily included the . . . arbitration provision in [those] agreement[s]." *Dental Assocs.*, 520 F. App'x at 353 (citing *Alticor, Inc. v. Nat'l Union Fire Ins. Co.*, 411 F.3d 669, 672 (6th Cir. 2005)). They did not.

### 4. The dispute falls outside the arbitration provision's scope

In sum, Sixth Circuit law is clear that "the cornerstone of [the court's] inquiry rests upon whether [it] can resolve the instant case without reference to the agreement containing the arbitration clause." *NCR Corp. v. Korala Assocs., Ltd.*, 512 F.3d 807, 814 (6th Cir. 2008) (citing *Nestle Waters*, 505 F.3d at 505). Under either of the Sixth Circuit tests, this dispute falls outside

13

the arbitration clause's scope. This is the case even though, by the arbitration agreement's language, one would expect this dispute to fall within it—which is why the court found the extant tests inapplicable. The court stands by this conclusion, does not find clear error in its analysis, and will not modify its Order upon reconsideration. However, the court now reaches an alternate holding: if the FAA does apply to this case, then, applying *Fazio* and *Nestle Waters*, the plaintiffs' claims do not fall within the arbitration clause's scope. And on that alternative basis, too, the court cannot compel arbitration under the FAA or stay the case pending arbitration.

## IV. CONCLUSION

"Clear error will be found only when the reviewing court is left with the definite and firm conviction that a mistake has been committed." *Chesnut v. United States*, 15 F.4th 436, 441 (6th Cir. 2021). This court has no such conviction, and therefore, in its discretion, will not grant the "extraordinary" and "seldom granted" relief the defendant seeks. *Mitchell*, 2011 WL 247421, at *1. For the foregoing reasons, the defendant's Motion to Alter or Amend Judgment (Doc. No. 21) will be denied.

An appropriate Order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge

14